## The Littlestown National Bank v. Penn Tile Works Co.

*James H. Duff*, Attorney General, *David R. Perry*, Special Deputy Attorney General, and *Fred E. Geiser*, for Commonwealth.

SHEELY, P. J., September 30, 1944.—The sheriff, upon a petition alleging that there was a real doubt as to the parties entitled to distribution of the proceeds of the sale of real estate and personal property of Penn Tile Works Company, sold under a writ of fieri facias, was permitted to pay the funds into court, and an auditor was appointed to make distribution. The auditor held that the fund realized upon the sale of personal property should be distributed to: (1) Costs; (2) taxes due the United States; (3) unemployment compensation contributions due the Commonwealth; (4)

labor claims. Since the claim of the United States exhausted the fund, there was no distribution to the lien of the Commonwealth or to labor claims. The Commonwealth filed exceptions to the report of the auditor, contending that it is entitled to priority over the claim of the United States or, at least, to equal priority with that claim. The notice of the Federal tax lien was filed with the prothonotary on July 21, 1943, and was based on an assessment returned to the collector on March 10, 1943. The liens of the Commonwealth were filed on January 28, 1944, and March 15, 1944.

The Commonwealth relies upon the case of Rivard et al. v. Bijou Furniture Co., 27 A. (2d) 853 (R. I.). It was there held that, by virtue of section 3466 of the Revised Statutes of the United States, 31 U. S. C. §191, taxes due to the United States were entitled to priority over all taxes due to the State of Rhode Island, excepting, however, such taxes as were due under the provisions of the State Unemployment Compensation Act, which act was enacted pursuant to title IX of the Social Security Act. It was held that the latter taxes were entitled to be considered of equal rank with the taxes due the United States under title VIII of that act in providing the revenues necessary to carry out the policy of the act as declared by Congress. Amplifying its position, the Supreme Court of Rhode Island said that it took the view that the State Unemployment Compensation Act, which was enacted by Rhode Island pursuant to the provisions of title IX of the Social Security Act, is, in effect, an integral part of that title. The court was of the opinion that, as an integral part of the Social Security Act, its revenue provisions were intended by Congress to be on a par with the revenue provisions of the Social Security Act. It was further pointed out that, since the State had adopted an Unemployment Compensation Law, the Federal Government was thereby relieved of a part of its burden, and

that the employer would be entitled to a credit of 90 percent of the Federal tax in view of the fact that the State had an Unemployment Compensation Act.

We do not have before us a copy of the Rhode Island Unemployment Compensation Law, but we do not believe that the result of that case can be reached under the Pennsylvania law. Section 310 of the Pennsylvania Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended by the Act of April 23, 1942, P. L. 60, 43 PS §790, provides:

"In the event of any distribution of an employer's assets pursuant to an order of any court under the laws of this Commonwealth, including any receivership, assignment for benefit of creditors, adjudicated insolvency, composition, or similar proceeding, contributions or installments thereof, or interest thereon, then or thereafter due shall be paid in full prior to all other claims except taxes, claims arising under The Workmen's Compensation Act of one thousand nine hundred fifteen, and its amendments and supplements, and claims for wages of not more than two hundred and fifty dollars to each claimant earned within six months of the commencement of the proceeding".

The present proceeding does not come within the terms of this section of the act. This is not a distribution of the assets of the defendant pursuant to an order of court; it is merely the distribution of the proceeds of a sheriff's sale of property of a defendant. Section 310 contemplates a complete distribution of assets under a proceeding which would result in a winding up of the affairs of the employer, such as a receivership, assignment for benefit of creditors, adjudicated insolvency, composition, "or other similar proceeding", and is confined to those cases: Marberger's Estate, 37 D. & C. 328 (1939).

Section 308.1 of the act, 43 PS §788.1, provides:

"All contributions and the interest and penalties thereon due and payable by an employer under the pro-

visions of this act shall be a lien upon the franchises and property, both real and personal, of the employer liable therefor, from the date a lien for such contributions, interest and penalties is entered of record in the manner hereinafter provided. Whenever the franchises or property of an employer is sold at a judicial sale, all contributions and the interest and penalties thereon thus entered of record shall first be allowed and paid out of the proceeds of such sale in the same manner and to the same extent that State taxes are paid: Provided, however, That the lien hereby created shall not be prior to pre-existing duly recorded real estate mortgages, subject nevertheless to the order of distribution prescribed in section 310 hereof".

This section of the act deals specifically with the situation in this case. This was a judicial sale and the amount due the Commonwealth for unemployment compensation contributions previously entered as liens would be entitled to priority of payment out of the proceeds of the sale, after the payment of preëxisting duly-recorded real estate mortgages, and subject to the order of distribution prescribed in section 310. The clause "subject nevertheless to the order of distribution prescribed in section 310 hereof" does not modify the provision that the lien created by this section shall not be prior to preëxisting mortgages, but does modify the provision that all contributions shall first be allowed and paid out of the proceeds of sale in the same manner and to the same extent that State taxes are paid. There is no relationship whatever between the order of distribution prescribed in section 310 and the provision that the lien of unemployment compensation contributions shall not be prior to preëxisting mortgages. It follows that the order of distribution prescribed in section 310 is, by reference, made a part of section 308.1. The result is that the correct order of payment under the Pennsylvania Unemployment Compensation Law (eliminating the question of Federal taxes) would be:

(1) Taxes; (2) claims under The Workmen's Compensation Act; (3) claims for wages of not more than $250; (4) Pennsylvania unemployment compensation contributions. This would be true both in insolvency proceedings and in judicial sales, with the qualification that in judicial sales the claim must have been entered as a lien.

This conclusion is contrary to the conclusion of the learned auditor, who held that the lien of the Commonwealth would precede labor claims in a judicial sale. It is, however, in accordance with the statement of the Commonwealth at the conclusion of its brief wherein it states:

"It is contended, therefore, that the liens as filed by the Commonwealth . . . shall be first allowed and paid out of the proceeds of the sale . . . subject only to taxes, claims arising under The Workmen's Compensation Act . . . and claims for wages of not more than two hundred and fifty dollars each".

Under section 3466 of the Revised Statutes of the United States, 31 U. S. C. §191, priority of payment is given to the United States, and the claim of the United States would be entitled to first position in the order of distribution. Contributions due under the Pennsylvania Unemployment Compensation Law of 1936 are subordinated to the claims in section 310 and are also subordinated to debts due the United States: Globe Solvents, Inc., et al. v. Nouskhajian, Trustee, 148 Pa. Superior Ct. 209, 215 (1942).

Thus, the claim of the United States takes priority over all other claims, including wage claims, but the claim of the Commonwealth of Pennsylvania is subordinated to wage claims. If we adopt the reasoning of the Supreme Court of Rhode Island and hold that the Pennsylvania Unemployment Compensation Law is an integral part of the Social Security Act, and that the claim of the Commonwealth for contributions there-

under is on a par with the revenue provisions of the Social Security Act, we would have to hold that the claim of the Commonwealth is entitled to priority over the claims for wages notwithstanding the provision of the Pennsylvania act that the claim of the Commonwealth should be subordinated to such claims.

This distinction is important in the present case, since the personal property fund, which was distributed to the lien of the United States, after payment of a proportionate share of the costs, amounted to $881.02. Claims for wages earned within six months of the commencement of the proceeding and not in excess of $250 for each claimant were allowed in the sum of $757.18, but the auditor held that they must be postponed in favor of the lien of the United States. Under the provision of the Pennsylvania Unemployment Compensation Law these claims would take priority over the claim of the Commonwealth and, if allowed, would reduce the fund for distribution to $123.84. The lien of the United States, however, amounts to $1,216. Thus, it would be impossible to place the claim of the Commonwealth on a par with the claim of the United States. To do so would require us to place the claim of the Commonwealth above the claim for wages, or to place the claim of the United States below the claim for wages, neither of which steps is permitted by statute.

We conclude that the auditor was correct in allowing the claim of the United States as a priority claim and, since this claim exhausted the fund for distribution, there was no balance for subsequent claims. The fact that the employer may have been entitled to a credit of 90 percent of the Federal tax had he paid the State tax has no application where the distribution is involuntary. Under section 1102 of title 42, U. S. C., the taxpayer is allowed the 90 percent credit for payments made to the State "before the date of filing his return for the taxable year". Here the taxpayer has made no payments to the State fund.

And now, September 30, 1944, the exceptions of the Commonwealth to the auditor's order of distribution are overruled, and the report of the auditor is confirmed absolutely, and it is directed that distribution of the funds be made as directed therein. An exception to this order is noted on behalf of the Commonwealth.